IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TREVOR MATTIS, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:16-cv-00306 (Erie) |
| | ) | |
| vs. | ) | |
| | ) | RICHARD A. LANZILLO |
| M. OVERMYER, GUSTAFSON, | ) | UNITED STATES MAGISTRATE JUDGE |
| CUMMINS, BEST, MEALY, | ) | |
| HASPER, KENNEDY, SHEESLEY, | ) | |
| SGT. ANTHONY, and MCNEELY, | ) | |
| | ) | OPINION ON MOTIONS |
| | ) | FOR SUMMARY JUDGMENT |
| Defendants | ) | |
| | ) | ECF No. 100 |
| | ) | ECF No. 104 |
| | ) | ECF No. 108 |
| | ) | |
| | ) | |

I.      Introduction

Presently before the Court are motions for summary judgment filed separately by the

Defendants in this case pursuant to Federal Rule of Civil Procedure 56.  ECF Nos. 101, 104, 108.

The Plaintiff filed a collective response in opposition to which the Defendants have replied.  *See*

ECF No. 114, ECF No. 121, ECF No. 124, ECF No. 126.  For the reasons that follow, this Court

will grant the Defendants' motions for summary judgment.[1]

II.      Factual and Procedural Background

On December 21, 2016, Mattis brought this civil rights action by filing a pro se complaint

pursuant to 42 U.S.C. § 1983.  Named as Defendants are the Department of Corrections

("DOC"), DOC Secretary John Wetzel ("Wetzel"), and the following individuals who were

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.  *See* ECF Nos. 4, 16, 18, and
127.

either staff members or medical personnel at SCI-Forest at all times relevant to the claims in this case: Superintendent M. Overmyer ("Overmyer"); Unit Manager Gustafson (incorrectly identified by Mattis as "Gustafason") ("Gustafson"); Counselor Cummins ("Cummins"); Unit Manager Best ("Best"); Sergeant Mealy ("Mealy"); Dr. Hasper ("Hasper"); Ms. Kennedy ("Kennedy"); Ms. Sheesley ("Sheesley"); K. Smith ("Smith"); Sergeant Anthony ("Anthony"); Sgt. Gilara ("Gilara"); Unit Manager Blicha ("Blicha"); C.O. Small ("Small"); and Nursing Practitioner McNeely ("McNeely").[2]  For ease of reference, all Defendants other than Defendants Hasper and McNeely will be collectively referred to as the "DOC Defendants."

Mattis' Complaint alleged multiple claims against one or more of the Defendants, based on alleged violations of his constitutional rights and/or his rights under Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Rehab Act").  In addition, he also alleged state tort claims of negligence and intentional infliction of emotional distress.  All Defendants filed motions to dismiss.  *See* ECF No. 31, 47.  This Court granted motions to dismiss the majority of Mattis' twenty claims.  ECF No. 59.  The following claims, however, were permitted to proceed:

1. Mattis' Eighth Amendment claim against Defendants Overmyer, Gustafson, Cummins, Simons, Cowen, Sheesley, Best, Mealy, and Anthony, arising from the removal of Mattis' Z-Code;
2. Mattis' Fourteenth Amendment equal protection claim against Defendants Overmyer, Gustafson, and Cummins, arising from the removal of Mattis' Z-Code; and
3. Mattis' intentional infliction of emotional distress claim against Defendants Gustafson, Cummins, Best, and Anthony.
4. A negligence claim against Defendants Hasper and McKeel.

[2] Mattis identifies Defendant Heather McKeel, CRNP, as "McNeely" in the caption of his Complaint, and she is incorrected listed as "McNeely" on the docket.  Counsel entered an appearance on her behalf, identifying this Defendant with the correct name.  ECF No. 13.  The Court will refer to this Defendant as "McKeel" in this opinion and accompanying order.

ECF No. 60. All of the remaining Defendants have moved for summary judgment.

III.     Summary Judgment Standard

A.     Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions,

answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*. (citations omitted).

B.     Local Civil Rule 56

Mattis has failed to properly satisfy the requirements of Local Rule 56(C). This rule requires a party opposing a motion for summary judgment to file a responsive concise statement of material fact in which he or she must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue. *See* LCvR 56(C)(1). Courts in this district require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n. 3 (W.D. Pa. Oct. 10, 2018), *adopted by* 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3

(W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Auth.*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

Mattis filed a Response to Concise Statement of Undisputed Facts but the document is unresponsive to the Concise Statements filed the by the Defendants. *See* ECF No. 115. He neither responds to the Defendants' numbered paragraphs nor admits or denies the facts stated therein. *See* LCvR 56(C)(1). Thus, he has not complied with the local rule.

A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). Mattis has also failed to comply with the local rules of this Court by referencing exhibits in his Concise Statement which he did not attach and file. Nor did he provide copies of these exhibits to the Defendants. *See* ECF No. 120, p. 1. Thus, he is citing to material that is not in the summary judgment record.

Mattis cannot evade these litigation responsibilities simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, 2010 WL 2853261, *5 (M.D. Pa. July 20, 2010) (pro se parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, 2006 WL 2590488, *4 (M.D. Pa. Sept. 8, 2006) (pro se parties must follow the Federal Rules of Civil Procedure). While courts give some leniency to pro se litigants when applying procedural rules, the Court "'is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out.'" *Mala v. Crown Bay Marina, Inc.*,

704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Accordingly, where Mattis has failed to specifically respond to a concise statement of material fact offered by the Defendants, that statement of material fact will be deemed admitted. LCvR 56(E). However, the Court will consider any facts properly stated in Mattis' pro se responses that contradict the Defendants' statements of fact, to the extent that they are supported by the record. *Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted").

IV.    Statement of Material Facts

A.    The DOC Defendants

Mattis' Z-Code status was revoked on February 18, 2016. ECF No. 3, ¶¶ 94-95. He filed a grievance on April 7, 2016 against Defendants Gustafson and Cummins (incorrectly identified by Mattas as "Cummings"). ECF No. 102-1, p. 3 (Grievance No. 619880). In his grievance, Mattis complains that the removal of his Z-Code by these two defendants endangered his psychological and physical wellbeing. *Id*. His grievance identifies only Gustafson and Cummins: "Unit Manager Gustafson and counsel Cummings endangered my psychological and physical wellbeing by removing my Z code . . .." *Id*. Although the grievance notes that Mattis spoke with the "block CO," Sgt. Anthony and Unit Manager Best, the grievance does not allege

that they were responsible for the removal of his Z-Code. DOC Defendants Overmyer,

Kennedy, Sheesley, and Mealy are not identified in the grievance and DOC Defendants Cowen

and Simons are neither identified in the grievance nor named as parties to this lawsuit. *See* ECF

No. 3, ¶ 232.

The prison denied the grievance because both the Psychology and Psychiatry

Departments determined Mattis did not meet the requisite criteria for the Z-Code designation.

*Id*. at 4. Mattis was given adequate notice of the change in his housing status and given a

"prolonged period of time in order to find a suitable cellmate." *Id*. The prison stated that

Gustafson and Cummins' removal of his Mattis' Z-Code did not endanger his mental or physical

wellbeing because no proof of need was present. *Id*. The prison also discounted Mattis' claim

that his wellbeing was "jeopardized" on March 30, 2016 when prisoner personnel attempted to

move another inmate into Mattis' cell, because prison records showed that the inmate did not

even make it past the doorway before Mattis attacked him with a weapon. *Id*. ("It is clear that

you jeopardized that inmate's wellbeing, not your own."). Mattis' appeal of this ruling was

denied. *Id*. at 1.

The review of Mattis' status was conducted using the same standard procedure the prison

utilizes for all inmates who were being evaluated for Z-Code status. In his answers to Mattis'

interrogatories, Defendant Cummins states that "there is a standard process used to

evaluate/review the appropriateness of all inmates with Z codes annually, which includes a set of

criteria and the votesheet process which is reviewed by various staff from various departments to

include the Unit Team, Psychology, Security, and Upper Administration Officials." ECF No.

102-3, ¶ 1. In response to another question, Cummins states that "Inmate Mattis was reviewed

under the same standards/criteria and same procedure as all other inmates being reviewed for z-

code appropriateness." *Id*. at ¶ 4. Further, neither Defendant Anthony nor Defendant Mealy were involved in the removal of Mattis' Z-Code status. ECF No. 102-5, p. 1; ECF No. 102-6, p. 1. Decisions regarding the housing status of inmates are not within the scope of their employment. *Id*.

Importantly, Mattis' Z-Code status was removed before he had any contact with several defendants. Defendant Sheesley did not have any interaction with Mattis until June 2, 2016. ECF No. 102-8, ¶ 1. This would have been four months after the removal of Mattis' Z-Code in February of that year. ECF No. 3, ¶¶ 94-95. Mattis' Complaint acknowledges that Defendant Best took over as unit manager sometime during the second week of March in 2016. *Id*. at ¶ 104. The revocation of Mattis' Z-Code predates Best's responsibilities as unit manager.

B. Defendant McKeel

Mattis alleges that Defendant McKeel, a certified registered nurse practitioner at the prison, violated his rights under the Eighth Amendment by failing to provide him medical treatment for dry skin and a "strap" for his eyeglasses which he states he needs to alleviate chronic headaches. ECF No. 3, ¶¶ 224, 238. Mattis also alleges that McKeel failed to properly treat his hypertension and failed to properly diagnose his "flat feet condition." *Id*. at ¶ 220. He also appears to allege a medical negligence claim against Defendant McKeel. *Id*. at ¶ 238.

The undisputed medical evidence reveals that Mattis was seen by McKeel on May 10, 2016, for complaints of dry skin and "flat feet." ECF No. 105-1, p. 63. Mattis requested lotion as well as medical permission to wear boots in the exercise yard as he claimed difficulty with standing in prison-issued footwear due to his flat feet. *Id*. McKeel examined Mattis and offered him Lubriskin lotion for his dry skin. *Id*. Mattis refused this treatment. *Id*. at 20. McKeel also advised Mattis that prison security protocols did not permit medical staff to issue a "boot pass" to

inmates who were housed in the RHU, as Mattis was at that time. *Id*. at 62. The records also indicate that Mattis' blood pressure was being checked twice a week for a two-week period. *Id*.

Mattis was seen by a prison physician for concerns of high blood pressure and weight loss on May 27, 2019. *Id*. at 61. Further monitoring and blood tests were ordered. *Id*. Defendant McKeel saw Mattis again on June 27, 2016. He continued to complain about problems with his feet from wearing prison shoes. *Id*. at 60. McKeel again told Mattis that under DOC policy, she could not order boots for him while he was housed in the RHU. *Id*. He was prescribed 650mg of Tylenol twice a day to help with his foot pain. *Id*. On August 2, 2019, McKeel saw Mattis again for complaints of dry skin/cracking on his feet. *Id*. at 58. He asked for lotion and told McKeel that he had been using lotion obtained from the prison commissary which was healing his right heel. *Id*. McKeel told him to continue using the lotion from the commissary, noting that lotion was not medically necessary at that time. *Id*.

Mattis' eyeglass strap was confiscated by prison security personnel on August 26, 2016. Mattis claimed that without it, he would not be able to read because his glasses fall off the end of his nose and cause him headaches. ECF No. 3, ¶ 199.

Defendant McKeel visited Mattis in his cell on September 7, 2016. Mattis had requested the visit because of the eye strap confiscation, but when McKeel showed up, he refused to be seen. McKeel completed a refusal of treatment form. ECF No. 105-1 at 21. Mattis was scheduled to see McKeel on October 4, 2016, but he refused to be seen. *Id*. at 12. The medical records reveal that Mattis told McKeel that he did not wish to be evaluated for his weight loss. *Id*. at 55. He made no complaints relating to his hypertension or dry skin. *Id*.

Mattis was seen by McKeel next on October 10, 2016, for hypertension. *Id*. at 4-5. A physical examination was conducted and McKeel noted that Mattis was compliant with his

medication and that his blood pressure was well controlled. *Id*. at 57-58. Blood tests, increased

water intake, and support hosiery were ordered. *Id*. On October 24, 2016, Mattis underwent the

lab testing McKeel had ordered and the results were normal. *Id*. at 25, 54. Mattis was prescribed

new eyeglasses on October 27, 2016 and was treated by McKeel for excessive ear wax on

November 8, 2016. *Id*. at 36, 40.

On December 30, 2016, McKeel saw Mattis in his cell in response to Mattis' complaints

of dizziness. *Id*. at 52. McKeel ordered that Mattis' blood pressure be monitored twice a day for

two weeks. *Id*. He was seen again by McKeel on January 25, 2017 for back pain. *Id*. at 51-52,

119. McKeel saw Mattis several more times for back pain unrelated to his hypertension. She

left the employment of the DOC's contract medical provider on April 8, 2017.

C.      Defendant Hasper

Defendant Hasper is a certified nurse practitioner and a doctor of primary mental health

nursing practice who provided psychiatric services to inmates housed at SCI-Forest. ECF No.

110-1, ¶¶ 1, 2. He was also a member of the prison's Psychiatric Review Team (PRT). *Id*. at ¶

5. As a member of the PRT, Defendant Hasper took part in the annual review of Mattis' Z-Code

status on November 4, 2015. *Id*. at p. 10. The PRT determined that Mattis was stable but that a

psychiatric evaluation should be undertaken before a Z-Code evaluation could be completed. [3]

*Id*.

Hasper conducted that evaluation on November 25, 2015. *Id*. at 11. Hasper's records

indicate that Mattis reported dealing with the recent death of his grandmother and the death of

his father two years earlier. *Id*. Mattis reported that "the things I used to enjoy . . . I don't

---

[3] The PRT records indicate that psychology department staff found Mattis "stable," his counselor reported him as "stable on unit; gets defensive when his Z code is mentioned," DATS related "no add. Tx. Rx.," and Mattis' unit manager reported "no issues on unit. Adament [sic] about retaining his Z Code." ECF No. 110-1 at p. 10. The psychiatry staff noted that Mattis needed to "meet with psychiatry before Z code eval. Need psych eval." *Id*.

anymore," and that he continued to have nightmares." *Id*. The record notes indicate Mattis complained of an inability to sleep, flashbacks to a beating he suffered from corrections officers in 1989 or 1990, and that he refused medications. *Id*. Hasper diagnosed him as suffering from Post-Traumatic Stress Disorder (PTSD). *Id*. at p. 3, ¶ 23. Hasper saw Mattis again on December 28, 2015 and February 8, 2016, for further evaluation. Hasper reaffirmed Mattis' diagnosis of PTSD on both occasions. *Id*. at ¶¶ 27, 32. Hasper conducted further evaluations on March 26, 2016, July 12, 016, and August 30, 2016. *Id*. at ¶ 14. Thereafter, Hasper states that Mattis began to refuse his visits. *Id*. at ¶ 38. After refusing appointments with Hasper on several more occasions, in December of 2016, the psychiatry department discontinued such visits, noting that Mattis had "B stability." *Id*. at p. 14.

When the PRT was asked again to consider the appropriateness of Mattis' Z-Code in early 2016, it found no psychiatric indication for such status. *Id*. at p. 4, 15. Mattis' Z-Code status was removed in February of 2016, he was given notice of this change, and afforded thirty days to find a new cellmate. *Id*. at 22. This period of time was, in actuality, extended to forty-seven days. *Id*.

D.      Plaintiff Mattis' Undisputed Facts

As noted above, Mattis does not specifically refute—by way of a responsive filing—any of the concise statements of material fact offered by the various Defendants. *See discussion, supra*. He therefore has not disputed the Defendants' facts as set out in their concise statements. *See, e.g., Angle v. Carter*, 2019 WL 981914, *2 (W.D. Pa. Feb. 1, 2019). Under our Local Rules, undisputed facts "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." L.Cv.R. 56(E). Typically, this Local Rule is strictly enforced.

11

*See, e.g., Janokowski v. Demand*, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008); *GNC Franchising LLC v. Kahn*, 2008 WL 612749, at *1 (W.D. Pa. March 3, 2008).

Although he did not dispute the Defendants' statements of material fact, Mattis did file his own statement of undisputed facts in which he states:

- He has chronic PTSD which causes him to have severe headaches;

- He cannot function in a "normal matter" if housed with another inmate;

- His PTSD causes him to become violent with any inmate housed with him;

- The PRC [PRT] determined that he was "a threat and danger to himself or others and incompatible with a cellmate;" and

- Defendants were "well aware and fully informed that double-celling [him] posed a substantial risk of serious harm by endangering plaintiff's wellbeing and/or the wellbeing of the cellmate;"

ECF No. 115, ¶¶ 1-12. He states further that each Defendant "was fully informed." *Id.* at ¶ 12(a)-(j). Mattis' concise statement also makes legal arguments pertaining to his various claims. For example, Mattis makes the statement that the Defendants were "deliberately indifferent." *Id.* at ¶ 13. Mattis' own statements "misconstrue the very purpose of a response to a statement of material fact, namely, to say why that fact is incorrect or disputed." *Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 467 n.14 (W.D. Pa. 2019).

The larger problem with Mattis' filing, however, is that his statements purport to rely on exhibits which were apparently not provided to the Defendants. The DOC Defendants have indicated that while the documents Mattis relies on are identified in his Appendix, "the actual documents have not been filed nor presented to Defense counsel." ECF No. 125, p. 1 at ¶ 1. Defendant McKeel states that while Mattis filed an Appendix . . . which identifies 126 Exhibits,

only one (1) – Exhibit B – was docketed and received by undersigned counsel." ECF No. 120 at

1. Mattis' failure to file these documents also violates our local rules. *See* L.Cv.R. 56(C)(3)

(requiring the appendix to include documents referenced in the responsive concise statement).

The Court has several options as a result:

> [i]f a party fails to properly support an assertion of fact or fails to
> properly address another party's assertion of fact as required by
> Rule 56(c), the court may: ... (2) consider the fact undisputed for
> purposes of the motion; (3) grant summary judgment if the motion
> and supporting materials—including the facts considered
> undisputed—show that the movant is entitled to it.

Fed. R. Civ. P. 56(e) (2–3); *see also Hamm v. Allstate Property & Cas. Ins. Co.*, 908 F. Supp. 2d

656, 665 (W.D. Pa. 2012). With this in mind, the Court will proceed to an analysis of the

Defendants' motions.

V.     Analysis

As noted, Mattis brings claims against various Defendants. The Defendants—both

individually and together—have filed motions for summary judgment. The Court will address

each of the Defendants' motions separately.

A.     Summary Judgment Is Granted to the DOC Defendants.

Mattis brings several claims against the DOC Defendants. He claims that DOC

Defendants Overmyer, Gustafson, Cummins, Kennedy, Sheesley, Best, Mealy, and Anthony

violated his rights under the Eighth Amendment by removing his Z-Code; that DOC Defendants

Overmyer, Gustafson, and Cummins violated his rights under the Equal Protection Clause of the

Fourteenth Amendment by removing his Z-Code; and a state law claim of intentional infliction

of emotional distress against Gustafson, Cummins, Best, and Anthony.[4]

---

[4] Mattis mentions "Simons," in his responsive filings but does not reference "Cowen." Since these persons have not
been named as Defendants in the Complaint, nor has Mattis amended his Complaint to include them as new
Defendants, the Court does not understand Mattis to be raising claims against these persons. See, e.g., Edwards v.

1.      The Eighth Amendment Claim against the DOC Defendants.

a.      Failure to Properly Exhaust

At the outset, summary judgment is granted to Defendants Overmyer, Kennedy, Sheesley, Best, Mealy, and Anthony because Mattis has failed to properly exhaust his claims against those Defendants.  Under the Prison Litigation Reform Act (PLRA), prisoners are prohibited from bringing actions with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence.  *Porter v. Nussle*, 534 U.S. 516, 532, (2002).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Further, "proper exhaustion" is required, *i.e.*, a prisoner must complete the administrative review process in accordance with the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015).  A procedurally defective administrative grievance precludes action in federal court.  *Id*.

Relevant to these proceedings is the DOC's official Inmate Grievance System, governed by Administrative Directive 804 ("DC–ADM 804").  *See* ECF No. 48-2.  This grievance process consists of three steps: (1) initial review by a Grievance Officer of an inmate grievance; (2) the appeal to the Facility Manager to review the decision of the Grievance Officer; and (3) the final review or appeal to the Secretary's Office of Inmate Grievance Appeals ("SOIGA") to review

Morgan, 2019 WL 2407478, *2 (E.D. Pa. June 5, 2019).  *See also Taylor v. Federal Bureau of Prisons*, 2019 WL 1982642, *3 (D.N.J. May 3, 2019) (citation omitted).  Thus, because Mattis "cannot obtain relief against non-defendants," the Court need not address any allegations concerning Simons and Cowen in resolving Defendants' motions for summary judgment.  *Shirey v. Ladonne*, 2019 WL 1470863, *4 n.4 (E.D. Pa. April 3, 2019) (quoting *Freeman v. Dep't of Corr.*, 2011 WL 1304830, at *8 (M.D. Pa. Mar. 31, 2011), *aff'd*, 447 Fed. Appx. 385 (3d Cir. 2011).

the decision of the Facility Manager. *See* DC-ADM 804 (April 27, 2015); *see also Smith v. Sec'y of Pa. Dep't. of Corr.*, 747 Fed. Appx. 101, 1003 (3d Cir. 2018) (discussing the three-step grievance process set forth in DC-ADM 804). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).

Mattis filed Grievance No. 619880 regarding the removal of his Z-Code status. In support of their motion, the DOC Defendants have filed Mattis' SOIGA file as to that Grievance. *See* ECF 102-1. A review of that file shows that while Mattis fully exhausted the relevant grievance, he never mentioned Defendants Overmyer, Kennedy, Sheesley, Best, Mealy, and Anthony anywhere in his filings. *Id.* For example, Mattis grieves that Defendants Gustafson and Cummings "endangered his psychological and physical wellbeing by removing [his] Z-Code," but identifies no other individual associated with the challenged action. *See id.* at 3. This a problem for Mattis because DC-ADM 804 is clear in its requirement that "[t]he inmate shall identify individuals directly involved in the event(s)" comprising the grievance. *See* DC-ADM 804 § 1(A)(11)(b). Indeed, the Court of Appeals for the Third Circuit has consistently recognized that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't. of Corrections*, 146 Fed. Appx. 554, 557 (3d Cir. 2005) (citing *Spruill*, 372 F.3d 218, 234 (3d Cir. 2004)). *See also Rosa-Diaz v. Dow*, 683 Fed. Appx. 103, 105–06 (3d Cir. 2017) (finding lack of exhaustion and procedural default where inmate failed to name particular defendant in grievance). Summary judgment is therefore appropriately awarded to Defendants Overmyer, Kennedy, Sheesley, and Mealy because they were not identified in Mattis' grievance.

*See, e.g., Murray v. Wetzel*, 2019 WL 1303217, at *5 (M.D. Pa. March 1, 2019); *Liddick v. Trit*, 2017 WL 4211051, at *12 (M.D. Pa. Aug. 31, 2017).

For his part, Mattis argues that he could not know and therefore could not name all the individuals involved in the revocation of his Z-Code at the time he filed Grievance 619880. ECF No. 116, at 9. He claims that because he has alleged a "conspiracy among staff at SCI-Forest to endanger his wellbeing . . . it was impracticable for [him] to identify all the defendants responsible for removing his Z-Code and ordering another inmate into [his] cell." *Id.* Mattis is correct that the PLRA does not have a "name all defendants requirement." *Jones v. Bock*, 549 U.S. 199, 217 (2007). But where a prisoner does not identify a defendant in the grievance and there is no indication in the record that prison administrators knew that the defendant was involved in the incident, the prisoner has failed to exhaust his administrative remedies. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013); *Johnson v. Townsend*, 314 Fed. Appx. 436, 442-43 (3d Cir. 2008). Here, there is no indication on the record that these Defendants were involved in the revocation of Mattis' Z-Code. While Mattis argues that it was "impracticable" for him to have named all Defendants at the time he filed his grievance, he does not explain why.

Mattis' principle argument is that the Defendants conspired to remove his Z-Code and that he did not know the identities of the conspirators at the time he filed his grievance. But his claim of conspiracy limits membership in the alleged enterprise solely to Defendants Gustafson and Cummins: "That meeting was a charade, window dressing to cover up counsel Cummings [sic] and Unit Manager Gustafson['s] conspiracy to set me up and endanger my wellbeing." ECF No. 102-1, at 5. Mattis therefore identified only Gustafson and Cummins as members of the alleged conspiracy. Since he specifically limits the conspiracy to those two individuals, the

grievance cannot be read as putting the prison officials on notice that the other DOC Defendants were also guilty of wrongdoing. *See Spruill*, 372 F.3d at 234.

Mattis did reference an unnamed block CO, Defendant Anthony, and Defendant Best in Section B of the DC-804 form. ECF No. 102-1, p. 3. But this does not save his claim against those two Defendants from summary judgment. DOC policy requires that "to the extent the identity of a defendant was 'a fact relevant to the claim,'" such an identification must be included in the inmate's statement of facts on the grievance form." *Williams*, 146 Fed. Appx. at 557 (quoting *Spruill*, 372 F.3d at 234); *see also* DC-ADM 804 § 1(A)(11)(b). Part B of the form asks the inmate to "list actions taken and staff you have contacted, before submitting this grievance." *See, e.g.*, ECF No. 102-1. The Court of Appeals for the Third Circuit has held that a Pennsylvania inmate's obligation to identify specific persons in his grievance "amounts to a requirement to identify the responsible individuals by name." *Spruill*, 372 F.3d at 234; *see also Williams*; 146 Fed. Appx. 554, 557 (3d Cir. 2005); *Brown v. Maxa*, 2013 WL 1150728, at *7 (W.D. Pa. Mar. 19, 2013) ("Failure to name a Defendant at any time in the grievance procedure constitutes a procedural default.").

The persons identified in Part B of Grievance 619880—Defendants Anthony and Best—are not the persons Mattis claims were involved in the removal of his Z-Code. Mattis' Complaint states a claim against Defendants Anthony and Best for "forcing plaintiff to take a cellmate after being fully informed and knowledgeable [sic] that this would endanger plaintiff's wellbeing" (ECF No. 1-1, ¶¶ 233-236), but he does not allege they were responsible for the actual removal of his Z-Code. Thus, Mattis has procedurally defaulted his claims against Defendants Anthony and Best by failing to identify them in Part A of his grievance.

b.    Removal of Z-Code Claim against Defendants Gustafson and Cummins

As mentioned above, Mattis did identify Defendants Gustafson and Cummins (incorrectly spelled "Cummings" by Mattis) in his grievance. His Eighth Amendment claim against those two Defendants is therefore properly exhausted. The substance of this claim is that Defendants Gustafson and Cummins' decision to revoke Mattis' Z-Code status and their forcing him to take a cellmate violated the Eight Amendment's prohibition against cruel and unusual punishment. It has been widely recognized, however, that the denial of Z-Code status, standing alone, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation. *Myer v. Giroux*, 2018 WL 6831147, at *5 (W.D. Pa. Dec. 28, 2018) (citing *Mattis v. Department of Corrections*, 2017 WL 6406884, at *12 (W.D. Pa. Dec. 15, 2017; *Henry v. Wilson*, 2007 WL 2746717, at *5 (W.D. Pa. Sept. 17, 2017) (citation omitted)). However, "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). So then, to establish such a violation, an inmate "must demonstrate that prison officials had actual knowledge of 'an excessive risk to inmate health or safety' and 'disregarded' this risk." *Myer*, 2018 WL 6831147 at *6 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In this case, Mattis alleges that his pre-existing mental health condition (PTSD) is exacerbated when he is forced to live with a cellmate, causing him to experience pain, anguish, and to turn violent. *See* ECF No. 115, ¶¶ 1, 2, 3, 4. However, a psychological aversion to sharing a cell does not give rise to an Eighth Amendment violation where the inmate has otherwise been given adequate care for his psychological disorder. *Myer*, 2018 WL 6831147, at *6. As this Court has noted, an allegation that a plaintiff's confinement in a double cell caused him to experience psychological torment including "nervous tension, emotional anguish, nausea,

anxiety, headaches, insomnia, panic and [an inability] to function in his daily activities" is insufficient to state an Eighth Amendment claim. *Henry*, 2007 WL 2746717, at *2. The Court explained:

> In the case at bar, Plaintiff received constant psychological treatment for his anxieties. Dr. Saavadra determined that Plaintiff's medical needs did not require single cell status. In fact, the psychology department at the institution determined that Plaintiff did not exhibit any legitimate need for single cell status and found that he was "anti-social, untruthful and manipulative." His numerous mental health evaluations indicate that there are no significant health indicators that require Z Code status. DOC officials reasonably relied on these evaluations in refusing to grant him single cell status. There simply is nothing in the record that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

*Id*. at *5 (citations omitted). Similarly, in *Hughes v. Miskell*, the plaintiff claimed "his medical and mental health conditions required him to have Z-Code single status" because, *inter alia*, "he had difficulties with cell mates and [having] a cell mate was a source of stress for him exacerbating his conditions." 2013 WL 5488654, at *12 (M.D. Pa. Sept. 30, 2013). The Court rejected the plaintiff's Eighth Amendment claim because he had received consistent treatment and evaluation for his perceived disorders. *Id*. at *22. *Cf. James v. Sauers*, 2018 WL 1178370, at *6-7 (W.D. Pa. Jan. 30, 2018) (rejecting an Eighth Amendment claim based on revocation of Z-code status where the record reflected that defendants "reviewed Plaintiff's institutional file, including his medical and psychological records" and "determined that there were no policy criteria upon which to continue Plaintiff's Z-code status").

Like the plaintiffs in those cases, Mattis also received frequent and comprehensive mental health treatment while incarcerated at SCI-Forest. Mattis was designated a "B roster" inmate for the majority of the pertinent time period, indicating that he had been treated for

mental health issues in the past but no longer required psychiatric treatment. ECF No. 110-1, at 2, ¶ 17, 22. Mattis also received mental health evaluations on numerous occasions, both prior to and following the removal of his Z-code. For example, he was seen by the psychiatric department regularly, with appointments in December of 2015, February of 2016, March of 2016, July of 2016, and August of 2016. Further, Mattis maintained a "B" stability code in 2015 and throughout 2016.[5] *Id*. at ¶ 17. And although Mattis had previously been granted Z-Code status, evidence in the record demonstrates that the prison's PRT concluded that there was no basis for continuing his single cell classification. Included in that review was Mattis' treating mental health professional, Defendant Hasper, who indicated that the PRT found "no psychiatric indication for [Mattis'] Z Code." *Id*. at ¶ 41.

The record reflects that Mattis received frequent mental health evaluations and treatments while incarcerated at SCI-Forest, some of which he declined. The record also demonstrates that the prison's PRT reasonably relied on those evaluations in concluding that no substantial risk of serious harm attached to their decision to revoke his single cell status. To the extent that Mattis contends otherwise, he has failed to adduce any evidence to support such a contention, let alone sufficient evidence to create a triable issue of material fact as to the culpability of Defendants Gustafson and Cummins. So then, because summary judgment is "'put up or shut up' time for the non-moving party," *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006), Mattis' failure to substantiate his claim is determinative. Summary judgment will be granted in favor of Defendants Gustafson and Cummins as to the Eighth Amendment claim.

---

[5] A "B" stability code indicates that an inmate had been treated for mental health issues but no longer requires psychiatric treatment. *Myer*, 2018 WL 6831147, at *7; ECF No. 110-1, ¶¶ 18-20.

B.      Summary Judgment is Granted to Defendant Hasper.

Mattis brings similar claims against Defendant Hasper, alleging that Defendant Hasper violated his Eighth Amendment rights in removing his Z-Code. [6] *See* ECF No. 3, ¶¶ 232.  Mattis argues that Hasper acted with deliberate indifference to his serious medical needs.  *Id*. at ¶ 232.

As stated above, the denial of Z-Code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation.  *Seawright v. Stachelek*, 1992 WL 6796 at * 2 (E.D. Pa. Jan.13, 1992) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1986)).  The Third Circuit has noted, however, that "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions."  *Nami*, 82 F.3d at 67 (finding that, if proven, allegations that plaintiffs were subject to sexual assault and that prison officials failed to protect them adequately by placing them in double cells, could establish deliberate indifference, "irrespective of whether the harm resulted from double celling or other conditions of confinement").  Here, Mattis argues that single cell status is necessary to protect his mental health condition.  He claims that, by forcing him to be housed with a cell mate, Defendant Hasper exacerbated his PTSD by exposing him to other inmates.  Mattis alleges that the Defendants were aware of this fact, as well as his condition; yet, despite this knowledge, they chose to place him in a double cell.  This claim, therefore, is one alleging medical indifference. *See, e.g., Gellock v. Prison Health Serv. Inc.,* 2009 WL 2038235, *9 (W.D. Pa. July 8, 2009).

To establish such a claim, Mattis must point to facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  However, "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable

---

[6] Mattis had brought other claims against Defendant Hasper, which were dismissed by prior order of this Court.  *See* ECF No. 59, ECF No. 60.

Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). This is because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Mattis' medical indifference claim against Hasper falls short. First, the record demonstrates, and he does not dispute, that he received frequent and routine mental health care from psychologists and psychiatrists at SCI-Forest, both before and after the revocation of his Z-code. "[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)); *see also Wisniewski v. Frommer*, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'"). Because Mattis received frequent treatment for his mental health conditions, any perceived "inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978).

Moreover, the record reflects that Hasper relied on his medical expertise and judgment in issuing his recommendation that Mattis' Z-Code be revoked. Before making that recommendation, Hasper examined Mattis' prison file, including his medical and psychological records, and conducted several in-person evaluations. Based on that review, Hasper concluded that Mattis no longer warranted a Z-Code because of his stable adjustment and not having a mental health-based need for such status. *See* ECF No. 110-1, at ¶¶ 40-45. He arrived at this conclusion after conducting a reasonable investigation and exercising his sound professional judgment. *See id*. Although Mattis disagrees with Hasper's conclusion, an inmate's disagreement with prison medical staff as to the medical necessity of a Z-Code is not sufficient to support an Eighth Amendment violation. *See, e.g., DeFranco v. Wolfe*, 387 Fed. Appx. 147, 158-59 (3d Cir. 2010) (finding no Eighth Amendment violation where the plaintiff and prison medical professionals disagreed as to the medical necessity of plaintiff's Z-Code and where "the record reflect[ed] that the committees that assign Z-codes considered the medical reports and a doctor's conclusion that [plaintiff's] condition would be adequately treated with medication"); *Rivera v. Rendell*, 2018 WL 3659935, at *5 (M.D. Pa. Aug. 2, 2018) ("At its core, Rivera's claim is based on a disagreement with the medical professionals' assessment of his mental health condition (and [the deputy superintendent's] reliance on that assessment when he found that [plaintiff] did not meet the criteria for a Z Code in March 2009). But such a disagreement does not amount to deliberate indifference."); *James*, 2018 WL 1178370, at *6-7 (rejecting an Eighth Amendment claim based on revocation of Z-Code status where the record reflected that defendants "reviewed Plaintiff's institutional file, including his medical and psychological records" and "determined that there were no policy criteria upon which to continue Plaintiff's Z-code status" based on "the lack of significant or current mental health treatment, lack of medical

needs, and the absence of adjustment issues in the previous ten-year period.").  Hasper's motion

for summary judgment will be granted as to this claim.[7]

C.  Summary Judgment is granted to Defendants Overmyer, Gustafson, and Cummins
On Mattis' Fourteenth Amendment Equal Protection Claim.

Mattis asserts that Defendants Overmyer, Gustafson, and Cummins violated the Due

Process Clause of the Fourteenth Amendment by removing his Z-Code status.  He claims that

these Defendants "subjected [him] to harsher treatment by assigning Z-codes to inmates who do

not fit the criteria for a Z-code, especially white inmates, and the defendants did not subject these

Z-coded white inmates to the same annual review process for Z-code maintenance as applied to

plaintiff."  ECF No. 115, p. 4.  In support of this claim Mattis cites to "Exh. A1: 123-124, Exh.

A14, Exh. A21," but as indicated previously, no such exhibits are a part of this record.

There are two fatal flaws in Mattis' claim against these Defendants.  First, he did not

grieve a denial of his rights under the Equal Protection Clause as to Defendant Overmyer

because he did not identify Defendant Overmyer in his grievance.  *See discussion, supra*.  As

already discussed, the DOC's grievance procedure requires an inmate to "identify [the]

individuals directly involved in the event(s)."  *Henry v. Lamoreaux*, 2018 WL 3037180, at *3

(W.D. Pa. June 19, 2018) (quoting DC-ADM 804 § 1.A.11).  The Court of Appeals for the Third

Circuit has held that this grievance policy amounts to a requirement to identify the responsible

individuals by name.  *Spruill*, 372 F.3d at 234.  *See also Williams v. Pennsylvania, Dep't of*

*Corrections*, 146 Fed. Appx. 554, 557 (3d Cir. 2005) (failure to identify defendants by name in

---

[7] Mattis has raised a state law negligence claim against the Defendants, arguing specifically that Defendant Hasper
acted negligently in removing his Z-Code.  ECF No. 3, ¶245; ECF No. 116, p. 15.  The Court declines to exercise
supplemental jurisdiction over this claim.  *See Atherton v. Shaffer*, 2019 WL 1923040, *5 (W.D. Pa. April 30, 2019)
(citing 28 U.S.C. § 1367(c)(3); *Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir.
1984) (citations omitted).  Mattis also brought a state law claim for intentional infliction of emotional distress
against Defendants Gustafson, Cummins, Best, and Anthony.  The Court likewise declines to exercise supplemental
jurisdiction over these claims.

grievances "means that [plaintiff] failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA"); *Brown*, 2013 WL 1150728, at *7. ("Failure to name a Defendant at any time in the grievance procedure constitutes a procedural default"). Summary judgment will therefore be granted to Defendant Overmyer on this claim.

Second, although he did identify Defendants Gustafson and Cummins in Grievance 619880 and did claim a "violation of my . . . Fourteenth Amendment rights," he did not raise a claim of discrimination therein. ECF No. 102-1, at 3. Instead, Mattis stated that Gustafson and Cummins' removal of his Z-Code "endangered my psychological and physical wellbeing," and that their actions in doing so "culminated in my life and wellbeing being jeopardized on 3/30/16." *Id*. No mention is made of any other inmates who may be similarly situated and differentially treated by these Defendants. *See, e.g., Petoff v. Sutter*, 2019 WL 1330841, *3 (W.D. Pa. March 25, 2019) (holding that a plaintiff must show that he was similarly situated to, and treated differently from, other inmates in order to prevail on a Fourteenth Amendment claim). Because he failed to grieve such a claim, summary judgment will be granted to Defendants Gustafson and Cummins on Mattis' equal protection claim.[8]

---

[8] Even had Mattis properly grieves an equal protection claim against these Defendants, the Court would still grant summary judgment in their favor. Defendants have brought forth evidence establishing that all inmates under evaluation for continuation or removal of a Z-Code were assessed using the same procedures. In answering Mattis' interrogatories, Defendant Cummins stated, for example, that "[t]here is a standard process used to evaluate/review the appropriateness of all inmates with Z codes annually, which includes a set of criteria and the votesheet process which is reviewed by various staff from various departments to include the Unit Team, Psychology, Security, and Upper Administrative Officials." ECF No. 102-3, p. 1-2. Mattis as not brought forth any evidence of white inmates being treated any differently than African-American inmates when it comes to the removal of Z-Code status. Nor has he disputed the Department's contention that the same procedures and criterion are used for all inmates, regardless of race, when reviews are conducted as to the appropriateness of Z-Code status. It is his burden to prove the existence of purposeful discrimination and he has not done so. *See Henderson v. Bickel*, 2018 WL 6725360, *5 (W.D. Pa. Dec. 21, 2018) (citing *Hernandez v. New York*, 500 U.S. 352 (1991)).

VI.     Conclusion

Defendants Overmyer, Gustafson, Cummins, Kennedy, Sheesley, Best, Mealy, and Anthony's motion for summary judgment [ECF No. 100] will be granted as to Count One (Eighth and Fourteenth Amendment claims) and Count Thee (Fourteenth Amendment claim). The Court will decline to exercise supplemental jurisdiction over Count Five (intentional infliction of emotional distress) and Count Six (negligence). Counts Five and Six will be dismissed without prejudice to being raised in state court.

Furthermore, Defendant Hasper's Motion for Summary Judgment [ECF No. 108] will be granted as to Count One (Eight Amendment Claim). Defendant McKeel's Motion for Summary Judgment [ECF No. 104] will be granted as to Count One (Eighth Amendment claim).

An appropriate order follows.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

Entered this 20th day of June, 2019.